1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES WILLIAM TIGNOR,                    No.  2:11-cv-0314 JAM AC

12                  Petitioner,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   M. D. MCDONALD, Warden,

15                  Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the second amended complaint,

19   ECF No. 17, which presents thirty claims challenging petitioner's 2007 conviction for multiple

20   offenses.  Respondent has answered, ECF No. 84, and petitioner has filed a traverse, ECF No. 87.

21                                 BACKGROUND

22        Petitioner was charged in Tehema County Superior Court with forcible oral copulation,

23   sodomy by force, two counts of rape, false imprisonment by force, possession of a firearm by a

24   felon, assault with a deadly weapon, criminal threats, assault with a firearm, three counts of

25   misdemeanor battery, possession of ammunition, and sexual penetration with a foreign object.

26   All charges arose from an incident in which petitioner held a former girlfriend captive overnight

27   in his trailer home and repeatedly assaulted her.  The victim was stabbed, hit with a gun, beaten

28   with closed fists, and sexually violated several times over before escaping the next day.

                                         1

Trial was by jury.  The evidence against petitioner included the testimony of the victim; the testimony of the nurse who conducted a sexual assault examination of the victim; photographs of the victim's injuries; test results confirming that semen found in the victim's vagina and anus matched petitioner's DNA profile; the testimony of Sheriff's deputies who responded to the hospital; the testimony of Sheriff's deputies who searched the petitioner's trailer and found gun parts and ammunition; test results confirming the presence of DNA consistent with the victim's DNA profile on petitioner's bedding; and the testimony of several individuals who saw and/or spoke with the victim after she fled petitioner's trailer and before she went to the hospital.

Petitioner was convicted of all charges.  The jury found true three sentencing enhancements related to the use of a gun, and petitioner admitted a prior prison term.  Petitioner was sentenced to 72 years and 4 months in prison.

The California Court of Appeal affirmed the judgment on August 25, 2008.  The California Supreme Court denied review on November 1, 2008.

Petitioner then filed three applications for habeas relief in the Tehama County Superior Court.  The first was filed on January 26, 2009 and denied on February 9, 2009.  The second was filed on April 13, 2009 and denied on June 22, 2009.  The third was filed on September 15, 2009 and denied on September 17, 2009.

Petitioner next filed three petitions for habeas relief in the California Court of Appeal. The first was filed on August 6, 2009 and the second on August 24, 2009.  These were denied by order filed September 4, 2009.  A third petition was filed on September 14, 2009 and denied on September 17, 2009.

Petitioner filed two applications for habeas relief in the California Supreme Court, on September 24 and 25, 2009.  Both petitions were denied on March 10, 2010.

The federal petition was filed in the Northern District of California on February 2, 2009, and amended twice before transfer to the Eastern District on February 3, 2011.  Extensive litigation followed regarding petitioner's exhaustion of state remedies.  Following respondent's eventual abandonment of his non-exhaustion theory, see ECF Nos. 73 at 3 (respondent's request to withdraw motion to dismiss) and 75 (order granting withdrawal of motion), an answer was

1   filed on June 22, 2012.  The traverse was filed on July 18, 2012.  The magistrate judge previously

2   assigned to the case subsequently granted in part petitioner's motion to expand the record, with

3   the caveat that only materials that had been before the state court would be considered on the

4   merits.  ECF No. 93 at 3.

5   <u>STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA</u>

6   28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

7   1996 ("AEDPA"), provides in relevant part as follows:

8   > (d) An application for a writ of habeas corpus on behalf of a person
    > in custody pursuant to the judgment of a state court shall not be
9   > granted with respect to any claim that was adjudicated on the merits
    > in State court proceedings unless the adjudication of the claim –
10

11  > (1) resulted in a decision that was contrary to, or involved an
    > unreasonable application of, clearly established Federal law, as
    > determined by the Supreme Court of the United States; or
12

13  > (2) resulted in a decision that was based on an unreasonable
    > determination of the facts in light of the evidence presented in the
    > State court proceeding.
14

15  The statute applies whenever the state court has denied a federal claim on its merits,

16  whether or not the state court explained its reasons.  <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785

17  (2011).  State court rejection of a federal claim will be presumed to have been on the merits

18  absent any indication or state-law procedural principles to the contrary.  <u>Id.</u> at 784-785 (citing

19  <u>Harris v. Reed</u>, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

20  unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

21  "The presumption may be overcome when there is reason to think some other explanation for the

22  state court's decision is more likely."  <u>Id.</u> at 785.

23  The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

24  principle or principles" previously articulated by the Supreme Court.  <u>Lockyer v. Andrade</u>, 538

25  U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and

26  standards flowing from precedent."  <u>Bradley v. Duncan</u>, 315 F.3d 1091, 1101 (9th Cir. 2002)

27  (quoting <u>Taylor v. Withrow</u>, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent

28  may constitute "clearly established Federal law," but circuit law has persuasive value regarding

1    what law is "clearly established" and what constitutes "unreasonable application" of that law.

2    Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044,

3    1057 (9th Cir. 2004).

4         A state court decision is "contrary to" clearly established federal law if the decision

5    "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529

6    U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state

7    court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

8    the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court

9    was incorrect in the view of the federal habeas court; the state court decision must be objectively

10   unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

11        Review under § 2254(d) is limited to the record that was before the state court. Cullen v.

12   Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court

13   reasonably applied clearly established federal law to the facts before it. Id. In other words, the

14   focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the

15   state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the

16   state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th

17   Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily,

18   without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court

19   denies a claim on the merits but without a reasoned opinion, the federal habeas court must

20   determine what arguments or theories may have supported the state court's decision, and subject

21   those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

22                                    DISCUSSION

23   I.    The State Court's Adjudication of Petitioner's Claims

24        All of the claims contained in the federal petition, with the exception of Claim Thirty,

25   were presented to the California Supreme Court in petitioner's August 24, 2009 habeas petition.

26   Lodged Doc. 15. The state court denied that petition summarily, without a reasoned opinion but

27   with citation to People v. Duvall, 9 Cal. 4th 464, 474 (1995). Lodged Doc. 17. This citation

28   indicates that the petition was denied for failure to allege facts that were sufficient to state a

1   claim.  Duvall, 9 Cal. 4th at 474 (discussing petitioner's "initial burden of pleading adequate

2   grounds for relief"); Pinholster, 131 S. Ct. at 1402 n.12 (recognizing that California summary

3   denial indicates failure to state a prima facie case, citing Duvall).  Accordingly, the determination

4   this court must review for objective reasonableness under § 2254(d)(1) is the state court's holding

5   that petitioner failed to state a prima facie case of a constitutional violation.  See Nunes v.

6   Mueller, 350 F.3d 1045, 1054-55 (9th Cir. 2003), cert. denied, 543 U.S. 1038 (2004).

7        II.    Judicial Bias

8        Claim One alleges that petitioner "may have" come into contact with the trial judge "in or

9   around the year 2006," when a man petitioner believes was Judge King was herding cattle along a

10  creek in Red Bluff, California.  Petitioner alleges that the cattle stampeded in response to

11  petitioner's vehicle.  Petitioner further alleges that he had a "possible" second encounter with the

12  trial judge at a private home in Red Bluff the same year.  He claims that he was denied due

13  process when the judge failed to recuse himself for "potential bias."  ECF No. 17 (Second

14  Amended Petition) at 4-5.[1]

15       It is clearly established that due process requires a fair trial in a fair tribunal.  In re

16  Murchison, 349 U.S. 133, 136 (1955).  It is equally well established that to prevail on a claim of

17  judicial bias a petitioner must plead and prove facts sufficient to "overcome a presumption of

18  honesty and integrity in those serving as adjudicators."  Withrow v. Larkin, 421 U.S. 35, 47

19  (1975).  There is no constitutional violation without a showing of facts that objectively

20  demonstrate a serious risk of actual bias.  See Caperton v. A.T. Massey Coal Co., Inc., 556 U.S.

21  868, 883-84 (2009).

22       It was not unreasonable of the state court to find that petitioner's allegations failed to state

23  a claim.  The facts alleged in support of Claim One do not even remotely support a conclusion

24  that the objective risk of bias in this case was constitutionally intolerable.  See Withrow, 421 U.S.

25  at 47; Caperton, 556 U.S. at 883-84.  Even if petitioner had encountered Judge King outside the

26

27  _____
    [1] Citations to court documents refer to the page numbers assigned by the court's electronic
    docketing system and not those assigned by the parties.

28

1  courtroom prior to his trial, the facts alleged would not support a conclusion that the average

2  reasonable judge in the same circumstances would have been incapable of judging the case fairly.

3  See Hurles v. Ryan, 706 F.3d 1021, 1039-40 (9th Cir. 2013) (applying clearly established federal

4  law to judicial bias claim).  Petitioner's speculative allegation of "potential bias" is patently

5  insufficient to state a prima facie case.

6       III.     Shackling

7       Claim Two alleges that petitioner was "led into the courtroom in handcuffs and waist

8  chains" on the morning of his trial, in clear view of the jury.  ECF No. 17 at 4.

9       The visible shackling of a criminal defendant can impair the presumption of innocence

10  and fairness of the trial in violation of due process.  Illinois v. Allen, 397 U.S. 337, 344 (1970);

11  Deck v. Missouri, 544 U.S. 622, 630-31 (2005).  Even visible restraints, however, do not violate

12  due process when they are justified by a specific state interest such as security.  Holbrook v.

13  Flynn, 475 U.S. 560, 568-69 (1986).

14       The state court did not act unreasonably in summarily rejecting this claim.  In applying the

15  pertinent constitutional precepts, reasonable jurists have consistently concluded that jurors' brief

16  glimpses of a defendant in restraints are harmless and fail to rise to the level of a due process

17  violation.   See, e.g., United States v. Alano, 62 F.3d 1180, 1190 (9th Cir. 1995) ("a jury's brief or

18  inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively

19  prejudicial to a defendant"); Castillo v. Stainer, 983 F.2d 145, 148 (9th Cir. 1992) (no prejudice

20  when, during transport to or from the courtroom, some members of the jury pool saw the

21  defendant in shackles); Ghent v. Woodford, 279 F.3d 1121, 1133 (9th Cir. 2002) (jurors'

22  occasional, brief glimpses of defendant in restraints at the entrance to the courtroom was not

23  prejudicial).

24       Petitioner presented the state court with no facts that might have established more than a

25  fleeting glimpse of restraints upon his entry to the courtroom.  In fact, the trial transcript

26  establishes that the exposure was brief and that petitioner was not visibly shackled during his

27  trial.  Immediately prior to jury selection, defense counsel reported to the judge that the defendant

28  had been brought into the courtroom in restraints while prospective jurors were gathered in the

1  adjacent jury room.  RT 46.  The court ordered that the chains be removed and the error not be

2  repeated.  RT 47.  The prospective jurors were admonished as follows immediately prior to jury

3  selection:

4  
> [I]f you were sitting in the jury room just a few moments ago, you
> saw the Defendant brought in from the back with handcuffs, ankle
> cuffs and I believe leg chains.  I want you all to understand that just
> because that happened, that is evidence of absolutely nothing.  The
> fact that the Defendant has been arrested, the fact that he has asked
> for a trial and that we are all here in that trial is also evidence of
> absolutely nothing.  The only thing that you can consider in
> reaching a verdict in a criminal case is the evidence that you hear
> from the witnesses on the witness stand after they have taken an
> oath.

10  RT 48-49.[2]

11       Because Claim Two alleges, and the record conclusively demonstrates, no more than a

12  single brief observation of petitioner in restraints, the facts do not establish a colorable due

13  process claim.  Accordingly, the state court's summary adjudication of Claim Two was not

14  unreasonable.

15       IV.    Ineffective Assistance of Trial Counsel

16       Claims Three through Five, Ten, Fourteen, Fifteen, Seventeen, Twenty-Two, Twenty-

17  Three, Twenty-Five and Twenty-Six allege ineffective assistance of trial counsel in violation of

18  petitioner's Sixth Amendment rights.

19       To establish a constitutional violation based on ineffective assistance of counsel, a

20  petitioner must show (1) that counsel's representation fell below an objective standard of

21  reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

22  Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

23  adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

24  errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not

25  address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

26  _____

27  [2] The law generally presumes that jurors follow their instructions.  Boyde v. California, 494 U.S.
370, 384-85 (1990);  Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994), cert. denied, 513
U.S. 1120 (1995).

28
7

1  prong. Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

2  sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

3       In Claims Three and Fourteen, petitioner alleges that counsel failed to investigate

4  petitioner's personal friendship with a deputy district attorney (Larry Olsen) who was trying to

5  purchase petitioner's residential property.  Petitioner contends that this relationship would have

6  supported a change of venue.  ECF No. 17 at 6-7, 13.  These allegations fail to state a claim under

7  Strickland.  The deputy district attorney with whom petitioner claims a friendship did not try the

8  case against him, and petitioner alleges no involvement by this individual in his prosecution.

9  Counsel cannot have been constitutionally ineffective for failing to investigate an irrelevant

10 matter and failing to bring a frivolous motion.  Accordingly, the state court did not act

11 unreasonably in summarily rejecting these claims.

12      In his traverse, petitioner contends that his relationship with Mr. Olsen was sexual, had

13 been ongoing for several years, and that the two men were in conflict with one another at the time

14 of petitioner's arrest.  ECF No. 87 at 5, 11-12, 25-26.  As petitioner was advised in relation to his

15 motion to expand the record, this court may not, at the stage of § 2254(d) review, consider

16 allegations or evidence that were not before the state court.  See ECF No. 93 at 3; see also

17 Pinholster, 131 S.Ct. at 1399 (district court must focus on what the state court did in light of what

18 it knew).  Accordingly, these supplemental allegations will be disregarded.

19      Claim Four alleges that counsel failed to investigate the potential bias of Juror No. 9, who

20 worked at a bar and grill frequented by petitioner and where petitioner once got into altercation

21 with a bouncer.  ECF No. 17 at 6.  The allegation of "potential" juror bias fails to state a claim.

22 In order to prevail, petitioner would have to plead and prove facts establishing that his jury was

23 biased as the result of counsel's failure to investigate and remove Juror No. 9 for cause, and that

24 the result of the trial would have been different absent Juror No. 9's participation in the verdict.

25 See Fields v. Brown, 503 F.3d 755, 776 (9th Cir. 2007) (en banc), cert. denied, 552 U.S. 1314

26 (2008).  Claim Four states no facts indicating that Juror No. 9 was actually biased.  Without such

27 facts, counsel cannot have acted unreasonably and petitioner cannot have been prejudiced.  Id.

28 Accordingly, the state court did not act unreasonably in concluding that Claim Four failed to state

1   a prima facie case under Strickland.

2        In Claim Five, petitioner alleges that counsel unreasonably failed to investigate the biases

3   of Judge King and Juror No. 9.  ECF No. 17 at 8-9.  For the reasons already explained regarding

4   Claims One and Four, these allegations fail to state a claim.  See Caperton, 556 U.S. at 883-84;

5   Fields, 503 F.3d at 776.  The state court did not unreasonably reject Claim Five.

6        Claim Ten alleges that counsel unreasonably failed to investigate the "potential bias" of

7   Juror No. 4.  Petitioner alleges that he provided roadside assistance to Juror No. 4 on an occasion

8   two years prior to trial, which ended with Juror No. 4 verbally abusing petitioner.  On this basis

9   petitioner alleges that Juror No. 4 "may have been unable" to remain impartial.  ECF No. 17 at

10  11.  These factual allegations do not provide a basis for establishing actual bias on the part of

11  Juror No. 4.  Moreover, in light of the trial record there is no reasonable likelihood of a different

12  result if this juror had not been seated.  Accordingly, the state court was not unreasonable in

13  finding that petitioner failed to state a prima facie Strickland claim.  See Fields, 503 F.3d at 776.

14       Claim Fifteen alleges that counsel was ineffective in failing to investigate Juror No. 9's

15  possible bias on grounds different from those presented in previous claims.  Here, petitioner

16  alleges that Juror No. 9 may have served as a juror in a 2003 case in which petitioner was

17  convicted on other charges.  Petitioner complains that he told his lawyer of his suspicions, but

18  that counsel failed to "take seriously these and other requests."  ECF No. 17 at 13-14.  Petitioner

19  presented the state court with no factual basis for his suspicion that Juror No. 9 had served on a

20  jury that previously convicted him of a crime.  He presented no factual basis for a conclusion that

21  Juror No. 9 was actually biased against him, or that a different result was likely had this juror not

22  been seated.  Without such facts, petitioner cannot support either prong of a Strickland claim.  See

23  Fields, 503 F.3d at 776.  The state court therefore reasonably concluded that Claim Fifteen failed

24  to state a prima facie case.

25       Claim Seventeen asserts that counsel performed unreasonably by dismissing the private

26  investigator that petitioner had hired to locate and interview witnesses.  ECF No. 17 at 15-16.

27  Petitioner does not make a showing of what testimony would have been developed had the

28  specified witnesses been interviewed.  Without such a showing, petitioner cannot demonstrate

1    that counsel's allegedly deficient performance prejudiced him.  See Strickland, 466 U.S. at 693-

2    94, 697; Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an account of what

3    beneficial evidence investigation into any of these issues would have turned up, [petitioner]

4    cannot meet the prejudice prong of the Strickland test."), cert. denied, 517 U.S. 1111 (1996).

5    Accordingly, the state court did not unreasonably conclude that Claim Seventeen failed to present

6    a prima facie case under Strickland.[3]

7         Claim Twenty-Two includes the allegation that trial counsel failed to make an adequate

8    record for appeal by failing to obtain necessary transcripts.  ECF No. 17 at 18-19.  Because

9    augmentation of the record may be and usually is accomplished by appellate counsel, this claim is

10   frivolous.  Claim Twenty-Two also alleges that petitioner was denied an adequate defense by trial

11   counsel's "lack of proper preparation of [petitioner's] own DVD player which he brought into the

12   County Jail to allow petitioner to hear the DVD of the interview with the [complaining witness."

13   ECF No. 17 at 18.  There are insufficient facts to make out a prima facie case of either deficient

14   performance or prejudice in relation to the DVD player.  The state court's summary rejection of

15   this claim was not unreasonable.[4]

16        Claim Twenty-Three contends that trial counsel failed to fully inform petitioner of the

17   consequences of going to trial.  Petitioner alleges that he rejected a six-year plea offer prior to

18   trial because his relationship with counsel was so bad that "effective communication had been

19   _____

20   [3] Petitioner attempts to supplement his factual allegations in the traverse.  ECF No. 87 at 29-30.
     Because these allegations were not presented to the state court, they cannot be considered in
21   determining whether the state court unreasonably rejected the claim.  See Pinholster, 131 S.Ct. at
     1398.

22   [4] Petitioner's traverse details trial counsel's failure to make a record of petitioner's concerns
     regarding Juror No. 9.  Petitioner sets forth additional facts regarding an incident in which three
23   individuals who later became involved in petitioner's case -- Juror No. 9; the DOJ criminalist
     who testified against petitioner; and a deputy clerk of the superior court -- "set up" petitioner in a
24   drug deal.  ECF No. 87 at 46, 52-53.  These allegations, which can only be characterized as
     fantastical, also form the basis of Claim 30, which is discussed infra.  This court's review of the
25   claim under § 2254(d) is limited to the state habeas court's adjudication of the claim that was
     before it in light of the record presented to that court.  Pinholster, 131 S.Ct. at 1399.  Accordingly,
26   these supplemental factual allegations will be disregarded.  The traverse also includes exhibits
     that appear to relate to the DVD issue mentioned in Claim Twenty-Two.  As these were not
27   presented to the state court, they will also be disregarded.

28

1    lost." ECF No. 17 at 19.  The familiar <u>Strickland</u> framework applies to claims of ineffective

2    assistance in the plea bargaining process.  <u>See</u> <u>Lafler v. Cooper</u>, 132 S.Ct. 1376 (2012).

3    Unreasonable advice regarding a favorable plea offer constitutes deficient attorney performance

4    for Sixth Amendment purposes.  <u>See</u> <u>id.</u> at 1390.  To establish prejudice in this context, a

5    petitioner must show a reasonable probability that both he and the trial court would have accepted

6    the forfeited plea bargain, and that it would have resulted in a lesser sentence.  <u>Id.</u> at 1391.  Here,

7    petitioner presents no specific facts regarding counsel's communication of the six-year offer, the

8    advice provided, or any of the relevant circumstances.  Indeed, it is impossible to tell whether

9    petitioner means to allege that counsel failed to relay the offer, or that he relayed it but

10   unreasonably advised petitioner to reject it, or whether counsel was unable to relay the offer

11   because petitioner was refusing to speak to him.  Given the absence of necessary facts, the state

12   court did not act unreasonably in rejecting Claim Twenty-Three for failure to state a prima facie

13   case.

14        Claim Twenty-Five alleges that counsel rendered ineffective assistance by: (1) failing to

15   file a discovery motion; (2) failing to notify the District Attorney 10 days prior to trial that the

16   DVD would be played for the jury; (3) failing to do anything about the fact that the state's

17   criminalist tried to "do a set-up drug deal on Petitioner at [a] bar in Redding": (4) failing to

18   provide a "true defense"; and (5) refusing to "acknowledge another person there at residence

19   when I returned from town on 01/27/07."  No further facts are provided.  ECF No. 17 at 20.[5]

20   Because these allegations fail to demonstrate either deficient performance or prejudice, the state

21   court did not act unreasonably in summarily rejecting the Claim.

22        Claim Twenty-Six alleges that trial counsel acted adversely to petitioner's interests by

23   speaking against him at the sentencing hearing when petitioner objected to the quality of the

24   representation he had received.  ECF No. 17 at 20-21.  These allegations are closely related to

25   those of Claims Eighteen and Twenty-Four, which are discussed below.  Insofar as petitioner

26

27   _____
     [5] Petitioner provides some additional facts in his traverse.  ECF No. 87 at 62.  To the extent these
     facts exceed the scope of the claim presented to the state court, they are disregarded.

28

1  seeks relief under <u>Strickland</u> for counsel's unspecified comments at sentencing,[6] he fails to

2  present facts demonstrating any effect of counsel's alleged misconduct on his sentence.  For this

3  reason, it was not unreasonable of the state court to conclude that there was no prima facie case of

4  a constitutional violation.

5        V.    <u>Denial of Access to Impeachment Evidence</u>

6        Petitioner's sixth ground for relief alleges that the complaining witness told detectives that

7  "she would have lied for the petitioner in an unrelated case," and that petitioner was denied

8  "access to" this statement for impeachment purposes.  ECF No. 17 at 9.  It is unclear whether

9  petitioner means to represent that the prosecutor withheld this evidence in violation of <u>Brady v.</u>

10  <u>Maryland</u>, 373 U.S. 83 (1963), as use of the word "access" suggests, or that defense counsel had

11  the information but unreasonably failed to use it in violation of <u>Strickland</u>.[7]  In either case, the

12  allegation is insufficient to state a claim.  Materiality under <u>Brady</u> and prejudice under <u>Strickland</u>

13  both require a showing that the unused evidence would likely have affected the verdict.  <u>See</u>

14  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).  The sparse allegations of Claim Six do not

15  support a prima facie showing of prejudice.  The jury was well aware that the complaining

16  witness had a prior personal relationship with petitioner.  It is highly unlikely that if she had made

17  the statement alleged, and if it had been used to impeach her at trial, the result of the proceeding

18  would have been different.  The state court therefore did not unreasonably reject this claim as

19  inadequate to support relief.

20        VI.    <u>Error in Jury Instructions</u>

21        In Claim Seven petitioner contends that the reasonable doubt instruction given at his trial

22  was constitutionally defective.  ECF No. 17 at 9-10.  Petitioner's jury was instructed according to

23  --------

24  [6] The transcript of the sentencing hearing reflects that petitioner stated a litany of complaints about counsel, and that counsel disputed his factual representations.  RT 377-81.  The judge told

25  petitioner that the matters he had raised were irrelevant to sentencing.  RT 382-83, 385.  Counsel made appropriate sentencing arguments, RT 376-77, and the judge stated appropriate reasons for

26  the sentence imposed, RT 387-90.

27  [7] As authorities supporting the claim, petitioner cites <u>Strickland</u> and a state case involving the right of co-defendants to separate counsel, <u>People v. Angulo</u>, 85 Cal. App. 3d 514 (1978).  ECF No. 17 at 9.

28

1  CALJIC 2.90.  CT 100.

2      It is clearly established that the "beyond a reasonable doubt" standard is constitutionally

3  required.  United States v. Winship, 397 U.S. 358, 364 (1970).  However, no particular form of

4  instruction is required in advising the jury of the government's burden of proof.  Victor v.

5  Nebraska, 511 U.S. 1, 5 (1994).  In Victor, the Supreme Court criticized the "moral certainty"

6  language then used in California but indicated approval of the "abiding conviction" language with

7  which petitioner's jury was instructed.  Id. at 12-13, 14.  "An instruction cast in terms of an

8  abiding conviction as to guilt, without reference to moral certainty, correctly states the

9  government's burden of proof."  Id. at 14-15.  In light of this precedent, petitioner cannot prevail

10  on Claim Seven.  See Lisenbee v. Henry, 166 F.3d 997, 1000 (9th Cir.) (rejecting similar

11  challenge), cert. denied, 528 U.S. 829 (1999).  The state court did not unreasonably apply Victor

12  by summarily dismissing this claim.

13      VII.   Criminalist Testimony

14      Claim Eight alleges that the trial court erred by allowing criminalist Sara Larson to testify

15  about forensic testing performed by another, non-testifying criminalist.  He contends that he was

16  denied his right to cross-examine the criminalist who actually performed the DNA testing that

17  was used to confirm the presence of his semen inside the victim and her bodily fluids on his

18  bedding.  ECF No. 17 at 10.

19      The trial transcripts reflect that Ms. Larson testified for the prosecution about DOJ's

20  procedures for DNA testing, and about the contents of a Physical Evidence Examination Report

21  generated by a colleague who had performed preliminary tests of the physical evidence in this

22  case.  RT 223-38.  The trial court had granted the government's motion in limine to introduce the

23  testing criminalist's findings through the testimony of another, due to the medical unavailability

24  of the criminalist who wrote the report.  CT 34-40 (motion); RT 45-46 (ruling on motion).

25      This claim presents a genuine issue under the Confrontation Clause.  Over the course of

26  the past decade, the Supreme Court has changed the doctrinal landscape governing admission of

27  laboratory reports.  In Crawford v. Washington, 541 U.S. 36 (2004), the court held that the

28  Confrontation Clause prohibits the admission of "testimonial" out-of-court statements by non-

13

1   testifying individuals.  The Court in Crawford did not define "testimonial statements."

2   Subsequently in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the Court held that

3   forensic laboratory reports are testimonial, and that criminal defendants therefore have a right to

4   cross-examine regarding their contents.  Melendez-Diaz did not address the question whether the

5   witness produced to testify about the report must be its author.  Finally, in Bullcoming v. New

6   Mexico, 131 S.Ct. 2705 (2011), the Court held that the analyst who prepared a report must

7   personally testify about it to avoid a confrontation violation.  After Bullcoming, the procedure

8   used at petitioner's trial is impermissible.

9        Petitioner's trial took place in 2007, however, after Crawford but before Melendez-Diaz

10  and Bullcoming.  During this period, it was not "clearly established" within the meaning of §

11  2254 that forensic laboratory reports were testimonial.  See Meras v. Sisto, 676 F.3d 1184, 1190

12  (9th Cir. 2012) (so holding).  Because Crawford did not require the conclusion that Ms. Larson's

13  testimony about the other criminalist's report violated the Confrontation Clause, the state court's

14  summary rejection of Claim Eight was not an unreasonable application of federal law.  Id. (state

15  court's approval of testimony by analyst's supervisor was not objectively unreasonable after

16  Crawford but before Melendez-Diaz and Bullcoming); see also Green v. Fischer, 132 S.Ct. 38, 44

17  (2011) (review under § 2254 limited to reasonableness of state court decision under Supreme

18  Court precedents announced "as of the time the state court renders its decision").

19       For the same reasons, the state court did not unreasonably reject petitioner's corollary

20  allegation that counsel performed deficiently by failing to object to Ms. Larson's testimony.

21      VIII.   Admission of Prejudicial Evidence

22       Claims Nine and Eleven allege that petitioner's due process rights were violated by the

23  improper admission of evidence.  Claim Nine challenges admission of the blanket from

24  petitioner's trailer, which he claims was covered in his dog's blood.  ECF No. 17 at 10-11.  Claim

25  Eleven challenges witness testimony regarding statements made by the complaining witness

26  before she went to the hospital and law enforcement was contacted.  Petitioner contends the

27  prosecutor exceeded the limits of the "fresh complaint doctrine."  ECF No. 17 at 11-12.

28       Errors of state law do not present constitutional claims cognizable in habeas.  Pulley v.

14

1    Harris, 465 U.S. 37, 41 (1984).  The erroneous admission of evidence only violates due process if

2    the evidence is so irrelevant and prejudicial that it renders the trial as a whole fundamentally

3    unfair.  Estelle v. McGuire, 502 U.S. 62 (1991).  The facts here fall far below that standard.

4        Even assuming the truth of petitioner's allegation that his dog "bled to death" on the

5    blanket shortly before the charged offenses, neither admission of the blanket nor counsel's failure

6    to establish that it contained dog blood would likely have affected the verdict.  Both petitioner's

7    DNA and that of the victim were identified on the blanket, as was DNA from an unknown source.

8    Counsel did establish on cross-examination that the sample could have contained animal blood.

9    RT 238.  A confirmed alternate source for some of the blood would not have changed the facts

10   regarding the known DNA, however.  There is no indication in the record that the blanket itself

11   was so grisly an exhibit as to have had significant prejudicial effect.[8]

12       The testimony regarding the victim's out-of-court statements also cannot reasonably be

13   construed as having rendered the trial fundamentally unfair.  The complaining witness was

14   available for cross-examination regarding any statements she made, and the other witnesses were

15   subject to cross-examination regarding their observations of her and their memories of what she

16   said.  In light of the trial evidence as a whole, there is no reasonable probability that the disputed

17   testimony so distorted the fact-finding process as to violate due process.

18       For these reasons, the state court's rejection of these claims was not unreasonable.

19   IX.    Insufficient Evidence

20       Petitioner alleges in Claim Twelve that there was insufficient evidence to sustain his

21   conviction for illegal possession of ammunition.  Petitioner alleges that his property is "in a

22   known hunting area and it was common for hunters to pass through his property while hunting

23   and anyone could have dropped spent or live shells on the property."  ECG No. 17 at 12.

24       Plaintiff may prevail on a due process claim of insufficient evidence only if the evidence

25   as a whole, viewed in the light most favorable to the prosecution, would not permit "any rational

26   _____

27   [8] Indeed, the blanket itself was not admitted into evidence.  Photographs of the blanket and other bedding, and photographs of fabric cuttings that were used for DNA testing, were introduced.  See CT 143-44 (exhibit list).

28

1   trier of fact" to find the essential elements of the crime beyond a reasonable doubt.  <u>Jackson v.</u>

2   <u>Virginia</u>, 443 U.S. 307, 319 (1979).  The evidence here was more than sufficient under this

3   standard.  Petitioner was convicted on the basis of bullets and shotgun shells that were found in

4   his trailer.  <u>See</u> RT 202-205  (testimony of Det. Hencratt).  There were no allegations that

5   ammunition found outdoors around petitioner's residence was related to this case.  Accordingly,

6   the claim was properly rejected by the state court.

7        X.        <u>Ineffective Assistance of Appellate Counsel</u>

8        In Claims Thirteen, Sixteen, and Twenty-Two, petitioner alleges that he was denied the

9   effective assistance of appellate counsel.  A criminal defendant enjoys the right to effective

10  assistance of counsel on appeal.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 391 (1985).  The <u>Strickland</u>

11  framework applies, and to demonstrate prejudice petitioner must show a reasonable probability

12  that he would have prevailed on appeal absent counsel's errors.  <u>See</u> <u>Miller v. Keeney</u>, 882 F.2d

13  1428, 1434 (9th Cir. 1989).

14       Claim Thirteen alleges in general terms that appellate counsel provided ineffective

15  assistance by failing to "investigate the claims herein and to assist the petitioner in gathering the

16  needed documentation necessary to prove the claims herein."  ECF No. 17 at 12.  In support,

17  petitioner more specifically alleges that appellate counsel failed to "file motions to get the DVD

18  tape of [the complaining witness's] interview with the detectives" and failed to obtain trial

19  counsel's file.  There is no showing of any meritorious appellate issue that would have been

20  discovered and presented absent the alleged errors.  <u>See</u> <u>Smith v. Murray</u>, 477 U.S. 527, 536

21  (1986) (winnowing out weak arguments on appeal is hallmark of effective advocacy, not

22  indicator of ineffectiveness).  Accordingly, the state court was not unreasonable in finding no

23  prima facie case of a constitutional violation.

24       In Claim Sixteen, petitioner alleges that appellate counsel failed to augment the record.

25  He references without summarizing a declaration from a Rob Britain of the "Glen-Tehema Meth.

26  Tack [sic] Force," which supposedly documents the evidence that this witness could have

27  provided to appellate counsel.  ECF No. 17 at 14-15.  No such declaration is attached to the

28  federal petition, however, and none accompanied the petition that was presented to the California

16

1    Supreme Court.  Lodged Doc. 15.  Accordingly, Claim 16 is patently inadequate to support relief

2    and the state court did not act unreasonably in summarily dismissing it.

3         Claim Twenty-Two reprises petitioner's complaints that the record was not augmented to

4    include unspecified "transcripts of hearings and decisions that effected [sic] the petitioner's trial

5    that had not been made part of the appellate record. . ."  ECF No. 17 at 18-19.  There are no

6    apparent gaps in the record of trial proceedings.  Petitioner has identified no meritorious appellate

7    issues that were forfeited by counsel's allegedly deficient performance.  The state court

8    reasonably rejected this claim.

9    XI.     Attorney-Client "Conflict"

10        Petitioner's eighteenth ground for relief claims that petitioner and his trial counsel had a

11   conflict that violated due process.  Petitioner alleges that his trial presented him as a very violent

12   man; that the private investigator he had hired could have developed an alternative and more

13   sympathetic view of him, including evidence of mental illness; and that "[m]itigating evidence is

14   crucial in cases such as the petitioner's and its denial is harmful."  ECF No. 17 at 16.

15        Despite petitioner's description of his claim as asserting a "conflict," the supporting facts

16   suggest a garden-variety ineffective assistance of counsel claim.  Because petitioner makes no

17   showing of the evidence that the investigator could have developed, and how it would have

18   resulted in a different outcome, any putative <u>Strickland</u> claim is facially defective.  <u>See</u>

19   <u>Strickland</u>, 466 U.S. at 693-94, 697; <u>Hendricks</u>, 70 F.3d at 1042.  Petitioner's general reference to

20   mitigating evidence, and his citation to two capital habeas cases, ECF No. 17 at 16, reflect a

21   misunderstanding of the law.  Mitigation principles fundamental to the capital sentencing process

22   have no bearing on this non-capital case.  The state court was not unreasonable in summarily

23   rejecting this claim.

24        In his traverse, petitioner attempts to clarify and supplement this claim.  ECF No. 87 at

25   32-36.  The additional facts fail to cure the deficiencies here noted.[9]  In any case, allegations and

---

[9] Petitioner details the investigations he wanted performed, and counsel's repeated failures to accede to his requests, but provides no specific allegations that would support the requisite showing of prejudice.

17

1  evidence that were not before the state court may not be considered here.  See Pinholster, 131

2  S.Ct. at 1198.

3      XII.    Denial of Cross-Examination

4          Claim Nineteen alleges that petitioner was denied the opportunity to cross-examine a

5  witness whose out-of-court statements were admitted into evidence.  Specifically, petitioner

6  alleges that a detective was erroneously permitted to testify that "Terry Ferrill . . . told the

7  investigating officers that she wiped down guns and seen the petitioner take guns from her car."

8  Petitioner objects that he was unable to cross-examine "Terry Ferrill."  ECF No. 17 at 17.

9          Detective Richard Davidson testified that he arrested petitioner at the home of Teresa

10  Ferrell.  RT 213-15.  The testimony focused on Det. Richardson's collection of a DNA swab from

11  petitioner.  There was no mention of a statement such as petitioner describes in Claim Nineteen.

12  The court's review of the trial transcript finds no other reference to Ms. Ferrell.  Because the

13  claim lacks any factual basis, its denial by the state court cannot have been unreasonable.[10]

14      XIII.    *Miranda* Violation

15          In Claim Twenty, petitioner alleges that detectives continued to interrogate him after he

16  invoked his right to remain silent.  ECF No. 17 at 17.  The trial transcript does not reflect that any

17  post-arrest statements were admitted against petitioner at trial.  Accordingly, summary rejection

18  of this claim was completely appropriate.[11]

19      XIV.    Incompetence

20          Claim Twenty-One alleges in conclusory terms that petitioner was tried while mentally

21  incompetent.  ECF No. 17 at 18.  Petitioner avers that he

22                is now under mental health care for mental disorders he suffered
              from prior to the charged offenses and was unable to effectively

23                communicate with defense counsel and defense counsel was unable
              to deal with petitioner's mood swings which may have contributed

24                to the total breakdown of their attorney client relationship and the
              denial of effective assistance of trial counsel.   See petitioner's

25

26  [10] In his traverse, petitioner suggests that the testimony was intentionally omitted from the
transcript by the court.  ECF No. 87 at 41.  There is no support for this allegation.

27  [11] In his traverse, petitioner alleges that such testimony was deliberately deleted from the
transcript.  ECF No. 87 at 41.  The contention lacks a factual basis.

28

1  mental health records attached hereto as exhibit

2  No mental health records are attached to the federal petition, and none were submitted to

3  the state court.  See Lodged Doc. 15.[12]

4  A criminal defendant has a constitutional right not to be tried while mentally incompetent.

5  Pate v. Robinson, 383 U.S. 375, 378 (1966).  A defendant is incompetent if, because of mental

6  disease or defect, "he lacks the capacity to understand the nature and object of the proceedings

7  against him, to consult with counsel, and to assist in preparing his defense."  Drope v. Missouri,

8  420 U.S. 162, 171 (1975).  The question is whether the defendant "has sufficient present ability to

9  consult with his lawyer with a reasonable degree of rational understanding – and whether he has a

10  rational as well as factual understanding of the proceedings against him."  Dusky v. United States,

11  362 U.S. 402 (1960) (per curiam).

12  Claim Twenty-One does not contain factual allegations sufficient to state a prima facie

13  case of incompetence under Drope and Dusky.  Mental illness that creates interpersonal problems,

14  including a difficult or hostile attorney-client relationship, does not without more constitute

15  incompetence.  Petitioner presents no facts related to the rationality of his understanding of the

16  proceedings against him.  The record of petitioner's statements at sentencing documents his

17  animosity toward counsel and the poor state of their relationship, but does not suggest any failure

18  to rationally understand the proceedings.  RT 377-85.  Because the claim lacks the factual detail

19  necessary to present a prima facie case, and is inconsistent with the trial record, the state court did

20  not act unreasonably in summarily denying it.

21  XV.   Trial Court's Failure to Conduct *Marsden* Hearing

22  Claim Twenty-Four asserts violations of due process and the Sixth Amendment in the trial

23  court's refusal to convene a post-verdict Marsden hearing[13] and/or appoint independent counsel to

24

---

25  [12] With his traverse, petitioner provides documentation that he has received mental health
26  treatment in prison.  ECF No. 87 at 48-51.  This evidence cannot be considered because it was not
presented to the state court.  Pinholster, 131 S.Ct. at 1399.  In any case, this evidence does not
relate to petitioner's mental status at the time of his trial.

27  [13] People v. Marsden, 2 Cal. 3d 118 (1970) (establishing procedures for hearing on defendant's
motion for substitute counsel).

28

1    explore a new trial motion based on ineffective assistance of counsel.  Petitioner alleges that

2    substitute counsel was necessary because trial counsel had failed to act on petitioner's requests to:

3    (1) investigate petitioner's claim that he went to the store and made purchases, (2) hire a hearing

4    specialist and mileage expert to read the computer on petitioner's car and prove he went to town,

5    and (3) interview several witnesses.  ECF No. 17 at 20.  The potential relevance of these requests

6    is not explained.

7         At his sentencing hearing, petitioner complained about his lawyer's performance on

8    numerous grounds, and the court ascertained that a Marsden motion had not been made or

9    attempted prior to trial.  RT 377-85. [14]  The undersigned notes that the complaints about trial

10   counsel that are enumerated in Claim Twenty-Four are not the same as the complaints that were

11   made at the sentencing hearing.  The trial court's failure to hold a Marsden hearing in response to

12   the statements at sentencing was the basis of petitioner's direct appeal. [15]

13        Denial of a Marsden motion presents a constitutional claim only where the conflict

14   between the defendant and counsel prevents effective representation.  Schell v. Witek, 218 F.3d

15   1017, 1026 (9th Cir. 2000) (en banc).   Because petitioner has not pled facts which would

16   establish prejudice from the alleged failures of counsel, he cannot demonstrate a Sixth

17   Amendment violation.  See Strickland, 466 U.S. at 693-94, 697.  Specifically, petitioner fails to

18   specify what evidence could have been developed had counsel conducted the requested

19   investigation, and how it would have created the likelihood of a different result.  See Hendricks,

20   70 F.3d at 1042.  Accordingly, summary denial was not unreasonable.

21

22   _____

[14] The traverse incudes copies of letters in which petitioner complained to counsel about his
23   handling of various matters.  One such letter specifically requested a Marsden hearing.  ECF No.
     87 at 65.  These materials were not before the state court and cannot be considered here.  They
24   would not change the result in any case.

[15] To the extent if any that Claim Twenty-Four overlaps with the closely related claim exhausted
25   on direct appeal, see Lodged Doc. 5 (petition for review), it may be appropriate to "look through"
     the summary dismissal of the state habeas petition to the reasoned opinion of the California Court
26   of Appeal.  See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991).  The Court of Appeal denied
     petitioner's ineffective assistance of counsel claim on grounds that petitioner had made no
27   showing of prejudice.  Lodged Doc. 4 at 6.  That conclusion is entirely reasonable.

28

1        XVI.    Juror Bias and Misconduct

2              Claims Twenty-Seven, Twenty-Eight and Thirty allege discrete instances of juror bias

3        and/or misconduct.  The Sixth Amendment guarantee of a fair trial includes the requirement of an

4        impartial jury.  Smith v. Phillips, 455 U.S. 209, 217 (1982).  A presumption of juror impartiality

5        applies, and is not rebutted by mere familiarity with the case.  Irvin v. Dowd, 366 U.S. 717, 722-

6        23 (1961).  The question is whether any impressions or opinions can be set aside and a verdict

7        rendered on the basis of the evidence alone.  Id. at 723.  Habeas relief for juror bias accordingly

8        requires a showing that the juror was actually or impliedly biased.  See Fields, 503 F.3d at 767-

9        68.

10              In Claim Twenty-Seven, petitioner alleges that a member of the jury identified only as an

11       "older man, restaurant owner," had witnessed a verbal confrontation between petitioner and a

12       Siskiyou County Sheriff's Deputy at a restaurant where the juror worked.  ECF No. 17 at 21.[16]

13       No further facts are provided.  Accordingly, there is no basis for a conclusion that the juror was

14       actually or presumptively biased against petitioner.  The state court's summary denial of the claim

15       therefore was not unreasonable.

16              Claim Twenty Eight alleges that "Juror Froome lied to Court" when she denied knowing

17       of the victim or the petitioner.  Petitioner alleges that Juror Froome knew the victim, and knew

18       who petitioner was, from a Salvation Army store.  Froome also spoke up at a meeting at an

19       elementary school where petitioner and the mother of his children "were involved in a combative

20       dispute."  ECF No. 17 at 21.  Petitioner does not explain Froome's connection to the Salvation

21       Army Store, how well she knew the victim or petitioner, the circumstances of any contact

22       between Froome and petitioner in relation to the elementary school, or how her supposed

23       familiarity with the victim and petitioner would have biased her.

24              The mere allegation that a juror had encountered petitioner and/or the victim in the

25       community, and/or failed to disclose such an encounter, does not state a prima facie case of

26       _____

27       [16] This allegation is very similar to the one made against Juror No. 9 in Claim 4.  The undersigned
         cannot determine whether the claims are duplicative or directed at different jurors.

28

1    bias.[17]  To obtain a new trial on the basis of a juror's dishonesty on voir dire, a party must

2    demonstrate that the juror was materially dishonest and that an honest answer would have

3    supported a challenge for cause.  McDonough Power Equip. v. Greenwood, 464 U.S. 548, 556

4    (1984).  Even assuming the truth of petitioner's allegations regarding this juror, there would have

5    been no basis for a cause challenge.  The Supreme Court has cautioned that courts must

6    "distinguish between [a juror's] mere familiarity with petitioner or his past and an actual

7    predisposition against him."  Murphy v. Florida, 421 U.S. 794, 800 n. 4 (1975).  Only the latter

8    implicates the constitutional guarantee of an impartial jury.  Id.  Petitioner alleged only the

9    former.  Summary dismissal was therefore not unreasonable.

10           Claim Thirty combines allegations previously stated regarding (1) the bias of Juror No. 9

11   and (2) the attempt of the testifying DOJ criminalist to "set up" petitioner by ensnaring him in a

12   drug deal.  In Claim Thirty petitioner alleges that on December 18, 2006, approximately six

13   weeks before the crimes for which he was convicted, he was eating in the Hen House Bar and

14   Grill and Juror No. 9 was working as the bartender.  "Madame Clerk Wanda Nobis" and DOJ

15   Criminalist Sara Larson entered the bar.[18]  Ms. Nobis pointed petitioner out to Juror No. 9

16   (presumably to ensure that Juror No. 9 noticed what was about to happen), and Ms. Larson then

17   attempted to buy drugs from petitioner.  Juror No. 9 lied about this on voir dire and was biased

18   against petitioner.  ECF No. 17 at 22.[19]  These bizarre allegations appear to be delusional or

19

20   [17] The traverse includes some additional factual detail, ECF No. 87 at 68, which will not be
     considered for purposes of review under § 2254(d).  The additional detail (that the victim had
21   been a cashier at the store and that petitioner saw her chatting with customer Fromme) does not
     cure the factual insufficiency of the claim.

22   [18]  The Clerk's Transcript from petitioner's trial contains numerous documents file-stamped and
     signed by a Deputy Clerk whose signature resembles "Wanda Nobis."  See, e.g., CT 77.

23   [19] Claim Thirty was presented to the California Supreme Court in a separate petition from all the
     other claims.  Lodged Doc. 16.  This petition was denied summarily, with citation to In re Dixon,
24   41 Cal. 2d 756 (1953).  Lodged Doc. 18.  Dixon bars the presentation of claims in habeas that
     could have been, but were not, raised on direct appeal.  See Jackson v. Roe, 425 F.3d 654, 656 n.2
25   (9th Cir. 2005).  The undersigned notes that the claim at issue here turns on extra-record facts and
     therefore could not have been raised on direct appeal.  Nonetheless, a Dixon bar may operate as a
26   procedural default for purposes of federal habeas.  Id.; see also Poland v. Stewart, 169 F.3d 573,
     584 (9th Cir. 1998) (federal court lacks jurisdiction to review state court's application of state
27   procedural rule), cert. denied, 528 U.S. 845 (1999).  This court need not consider application of
28   (continued…)

1   frivolous on their face.  See Blackledge v. Allison, 431 U.S. 63, 76 (1977) (permitting summary

2   dismissal of habeas claims where allegations are "palpably incredible" or "patently frivolous or

3   false").  The state court was not unreasonable in summarily dismissing the claim.

4   XVII.  Speedy Trial

5         Claim Twenty-Nine alleges that petitioner's speedy trial rights were violated when the

6   case against him was dismissed and refiled under a different case number "moments later" on

7   May 1, 2007.  ECF No. 17 at 21-22.

8         The undersigned cannot discern the factual or legal basis for this claim.  The "refile

9   complaint" dated May 1, 2007 and bearing Case No. NCR71728 is the first document in the

10  Clerk's Transcript, CT 2, and respondent provides no information regarding events preceding the

11  filing of that document.  In any case, it cannot have been unreasonable for the state court to

12  summarily dismiss a claim with no discernable factual or legal basis.[20]

13                              CONCLUSION

14        For all the reasons explained above, the state court's summary denial of petitioner's

15  claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).

16  Accordingly, IT IS RECOMMENDED that the petition for writ of habeas corpus be denied.

17        These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within fourteen days after service of the objections.  The parties are

23  _____

24  the procedural default doctrine and its exceptions, however, because the claim is plainly
    meritless.  See Lambrix v. Singletary, 520 U.S. 518, 522−25 (1997); Franklin v. Johnson, 290

25  F.3d 1223, 1232 (9th Cir. 2002) (proper to bypass possible default where claim can be denied on
    the merits).

26  [20] Once again, petitioner attempts to explain the factual basis for his claim in his traverse, alleging
    that the original case was dismissed after counsel declared a conflict and then was refiled to

27  permit a vindictive prosecution and without appointment of conflict-free counsel.  ECF No. 87 at
    71.  Even if this court could consider these additional allegations, they would not state a claim.

28

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: August 26, 2013

4

5

ALLISON CLAIRE
6  UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28